UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

BRENDA FLAGG,

                    Plaintiff,

     -against-                                                    5:11-CV-00458 (LEK)

MICHAEL J. ASTRUE, Commissioner
of Social Security,

                    Defendant.

_____

### MEMORANDUM-DECISION and ORDER

## I.      BACKGROUND

### A. Procedural History

On January 26, 2009, Plaintiff Brenda Flagg ("Plaintiff") filed an application for social security

disability insurance benefits and supplemental security income under the Social Security Act, alleging

that she has been unable to work since November 1, 2008 due to depression, posttraumatic stress

disorder, and anxiety disorder.  Administrative Transcript (Dkt. No. 9) ("Tr.") at 226-27, 251.  The

Commissioner initially denied the applications, and Plaintiff timely requested a rehearing before an

Administrative Law Judge ("ALJ").  Id. at 90-91.  Plaintiff, represented by counsel, appeared and

testified at a hearing on July 23, 2010 in Syracuse, New York before ALJ Milagros Farnes.  Id.  ALJ

Farnes issued a decision finding that Plaintiff was not disabled on August 12, 2010.  Id.

The present action was commenced pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) following

the denial of Plaintiff's requested review of the ALJ decision by the Appeals Council on March 25,

2011.  Dkt. No. 1.  Defendant filed an Answer on October 3, 2011.  Dkt. No. 7.  Plaintiff filed a

supporting Brief on November 17, 2011.  Dkt. No. 13 ("Plaintiff's Brief").  The Defendant filed a Brief

in opposition on March 5, 2012.  Dkt. No. 17 ("Defendant's Brief").  On May 2, 2012, the Honorable

Gary Sharpe, Chief United States District Judge for the Northern District of New York, issued an order

terminating the referral to Magistrate Judge Randolph Treece and directing the Court to decide this

case directly without a Report and Recommendation.  Dkt. No. 19.

### B.  Medical Evidence

#### 1. Dr. Wike

The Record indicates that Dr. Jeffrey W. Wike of Family Medicare Group P.C. began treating

Plaintiff for symptoms related to depression and anxiety on June 12, 2008.  Tr. at 288.  Dr. Wike

opined that Plaintiff appeared healthy and well-developed.  Id. at 288, 294, 308.  In addition, on

September 10, 2008, Dr. Wike stated that Plaintiff's speech was clear and fluent, her thought processes

demonstrated coherence, logic, no indication of delusional thinking, homicidal ideation, or suicidal

ideation, and her judgment was realistic and insight appropriate.  Id. at 298.  On February 19, 2009, Dr.

Wike observed that Plaintiff continued to struggle with panic attacks and anxiety, although her

language processing was intact and her thought processes demonstrated relevance and logic.  Id. at 308.

#### 2. Dr. Giaccio

Dr. Richard Giaccio, Plaintiff's treating psychiatrist, evaluated Plaintiff and found that her

concentration was poor and that she had mental health conditions.  Id. at 373, 402.  Dr. Giaccio also

filled out a medical source statement stating that Plaintiff was unable to meet competitive standards

and could not satisfactorily perform the following activities independently, appropriately, effectively,

and on a sustained basis in a regular work setting: remembering work-like procedures, maintaining

attention for two hours; sustaining an ordinary routine without special supervision; working in

coordination with or proximity to others without being unduly distracted; making simple work-related

2

decisions; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; responding appropriately to changes in a routine work setting; and dealing with normal work stress. Id. at 404-05. In addition, he found that Plaintiff was unable to meet competitive standards in the following mental abilities and aptitudes needed to do particular types of jobs: interacting appropriately with the general public; traveling in an unfamiliar place; and using public transportation. Id. at 406. Finally, he found that Plaintiff had no useful ability to perform the following activities in a regular work setting: accepting instructions and responding appropriately to criticism from supervisors. Id. at 404-05.

### 3. Dr. Noia

On March 4, 2009, Dr. Dennis M. Noia, performed a consultative psychiatric examination of the Plaintiff. Id. at 282-85. He estimated her intellectual functioning to be in the borderline range, but ruled out a diagnosis of borderline intellectual functioning. Id. Dr. Noia opined that Plaintiff appeared to have difficulty dealing with stress and diagnosed panic disorder NOS. Id. He also found Plaintiff is able to count and perform simple calculations, has a coherent thought process, is not delusional, does not have disordered thinking, is capable of maintaining attention and concentration for tasks, and appears intellectually capable of managing money. Id.

Dr. Noia's medical source statement noted that Plaintiff appeared capable of understanding and following simple instructions and directions, performing simple and some complex tasks with supervision and independently for tasks, regularly attending to a routine and maintaining a schedule, making appropriate decisions, and relating to and interacting moderately well with others. Tr. at 284-85. Finally, he noted she had some difficulty dealing with stress. Id.

3

### 4. Dr. Mata

On April 22, 2009, the state agency medical reviewer, Dr. Mata, found that Plaintiff had borderline intellectual functioning.  Id. at 334.  Following his examination, Dr. Malta's summary conclusions indicated that Plaintiff had no marked limitations to her understanding and memory, sustained concentration and persistence, social interaction, or adaptation.  Id. at 347-48.  In the Functional Capacity Assessment, he wrote that Plaintiff has a borderline intellect with mildly impaired memory skills and that her attention and concentration is intact with good performance functioning.  Id. at 349.  It was his opinion that "claimant retains the functional capacity to perform the basic mental demands of the four general areas of functioning for unskilled work, in a low stress setting."  Id. at 349.

### 5. Vocational Expert

Mr. Luther Pearsall testified as a vocational expert during the administrative hearing, stating that a person the same age as Plaintiff, with the same education, vocational profile, and exertional and non-exertional limitations could not perform Plaintiff's past work.  Id. at 73-74.  Mr. Pearsall then testified that he could only think of one job in the national economy – surveillance monitor – that existed in significant numbers that Plaintiff could perform.  Id. at 75.

### C. Plaintiff Testimony

On a typical day, Plaintiff testified that she dresses, bathes, grooms herself, prepares some food, and performs general cleaning and household chores like laundry.  Id. at 284.  She reads magazines and the newspaper, watches television, and watches birds.  Id. at 70-72.  She has a driver's license and drives, but typically sticks to her local area and avoids public places that are unfamiliar or where there are large groups of people.  Id. at 64, 71-72.

Plaintiff testifies that she has a learning disability but can still read and write.  Tr. at 63. She

dropped out of school after completing ninth-grade, received special education, and also continues to have difficulty reading, writing, spelling, and doing math.  Id.  Plaintiff worked at Kentucky Fried Chicken for five years where she prepared food and worked in the drive through.  Tr. at 66.  She was later employed at Family Dollar where she worked as a stock person and cashier.  Id. at 65, 73.  Finally, she worked at McDonald's where she did the dishes and made breakfast.  Id. at 64.

## II.    LEGAL STANDARD

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Instead, a reviewing court will only reverse the Commissioner's determination if the correct legal standards were not applied or if the determination was not supported by substantial evidence.  Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).

The substantial evidence standard requires evidence amounting to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  If the evidence is deemed susceptible to more than one rational interpretation, then the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support

the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  That is, the Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act.[1]  See 20 C.F.R. §§ 416.920, 404.1520.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, and the five-step process remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42 (1987).  While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at

---

[1]  This five-step process is detailed as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984).  The final step of the inquiry is, in turn,

divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by

considering his or her physical ability, age, education, and work experience.  Second, the

Commissioner must determine whether jobs exist in the national economy that a person having the

claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g),

404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460 (1983).

## III.    DISCUSSION

### A.  Commissioner's Decision

The ALJ proceeded through the aforementioned five steps by first determining that Plaintiff has

not engaged in substantial gainful activity since her alleged onset of disability on November 1, 2008.

Tr. at 16.  Second, the ALJ determined that Plaintiff had the following severe impairments: anxiety,

depression, diabetes, lower back pain, panic attacks, and post-traumatic stress disorder.  Id.  Third, after

reviewing the record, the ALJ determined that Plaintiff does not have an impairment or combination of

impairments that meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart

P, Appendix 1 ("the Listings").[2] Id. at 17.  Fourth, the ALJ found that Plaintiff did not have the

residual functional capacity to perform any past relevant work.  Id. at 22.  Finally, the ALJ found that

Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b)

and 416.967(b).  Id. at 18.  Specifically, the ALJ found that Plaintiff can carry, lift, pull, and push up to

ten pounds, frequently and occasionally.  Id. at 18-19.  Moreover, the ALJ found that Plaintiff can sit

---

[2] More specifically, the ALJ found that the severity of Plaintiff's impairments do not meet or
equal any section of Social Security Listing 1.04 for disorders of the spine, Social Security listing 9.08
for diabetes mellitus, Social Security Listing 12.04 for affective disorders, or Social Security listing
12.06 for anxiety related disorders.  Tr. at 17.

for twenty minutes at a time, stand for thirty minutes at a time, and walk for fifteen minutes at a time. Id. at 18-19.  However, the ALJ found that Plaintiff is limited to simple, routine tasks and cannot interact with the public or perform production or paced work.  Id. at 18-19.

As noted above, the ALJ's decision became the Commissioner's final decision on March 25, 2011, when the Appeals Council denied Plaintiff's request for review.  Id. at 1.

### B. Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed.  Plaintiff offers six principal arguments in support of her position.  First, she asserts that the ALJ failed to develop the record when she did not order a consultative intelligence evaluation.  P.'s Brief at 1.  Second, Plaintiff argues that the ALJ erred at Step 2 when she did not find Plaintiff's borderline intellectual function to be a severe impairment.  Id.  Third, Plaintiff contends that her impairments meet the criteria for Listing 12.04.  Id.  Fourth, Plaintiff argues that the ALJ's Residual Functional Capacity finding is not supported by substantial evidence because the ALJ failed to follow the Treating Physician Rule.  Id. Fifth, Plaintiff asserts that the ALJ failed to apply the appropriate legal standards in assessing Plaintiff's credibility.  Id.  Finally, Plaintiff argues that the ALJ's Step 5 determination is not supported by substantial evidence and is the product of legal error.  Id.  The Court will address each argument in turn.

#### 1. Development of the Administrative Record

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."  Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996) (citing Echevarria v. Secretary of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982)).  Moreover, "[t]his duty exists even when the claimant is represented by counsel."  Perez, 77

8

F.3d at 47.

If a gap exists in the administrative record then the plaintiff has not been afforded a full and fair hearing and the ALJ has failed his or her duty to develop the administrative record. Hankerson v. Harris, 636 F.2d 893, 897 (2d Cir. 1980). Therefore, remand is appropriate when there are gaps in the administrative record or the ALJ has applied an improper legal standard. Hankerson, 636 F.2d at 897; Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980). "Remand is particularly appropriate where . . . [a court is] unable to fathom the ALJ's rationale in relation to the evidence in the record without further findings or clearer explanation for the decision." Pratts v. Chater, 94 F.3d 34, 38 (2d Cir. 1996) (citing Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982)) (internal quotation marks omitted). Such a gap exists in the record when the ALJ bases a conclusion on evidence which is absent from the record or not fully developed within the record. See, e.g., Pratts, 94 F.3d at 39; Echevarria, 685 F.2d at 755-56; Hankerson, 636 F.2d at 896.

An ALJ has the discretion to order a consultative exam to develop the record when the ALJ determines that he or she cannot get the information needed to form a conclusion based on solely the medical sources within the record. 20 C.F.R. § 404.1519a(a). A consultative examination is used "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision on [the applicant's] claim." 20 C.F.R. § 404.1519a(b).

In this case, Plaintiff argues that the ALJ failed to develop the administrative record when she did not order a consultative intelligence evaluation because the record contains no current intelligence evaluations. Pl.'s Br. at 14-15. Plaintiff requested a Consultative Psychiatric Examination that includes an IQ/Organicity Evaluation with reading subtests because Plaintiff alleges a learning disorder as one of her impairments. Tr. at 32. Plaintiff contends that the absence of such evaluations has

deprived her of a full and fair hearing.  Pl.'s Br. at 14.

The Court finds Plaintiff's argument unavailing because the record contains substantial evidence from both treating and consultative sources indicating that her cognitive and mental abilities were not significantly impaired.  This is not a case in which a crucial issue of mental capacity is unexplored or left undeveloped.[3]  See, e.g. Pratts, 94 F.3d at 39 (holding that there was a gap in the record because plaintiff's medical history was incomplete, lacked significant medical records, and was comprised of incomplete or otherwise illegible records); Echevarria, 685 F.2d at 755-56 (holding that there was a gap in the record because the ALJ did not develop record on symptoms mentioned in medical records).  Nor is this a case in which the ALJ's conclusion was dependant on evidence that she failed to develop.[4]  See Hankerson, 636 F.2d at 896 (holding that the ALJ failed to develop the record because the ALJ did not question plaintiff about an illness despite basing part of his conclusion on the existence of that illness).  Furthermore, Plaintiff was not diagnosed with mental retardation or an organic mental disorder by either Dr. Giaccio or Dr. Wike, her treating physicians.  Tr. at 285, 362, 378.  Instead, both doctors stated that her thought process was logical and organized, and a consultative examination ruled out borderline intellectual functioning.  Id.

Accordingly, the Court holds that the ALJ did not fail to develop the administrative record with respect to Plaintiff's borderline intellectual functioning because the record contains substantial

---

[3]  Although Plaintiff contends that a consultative intelligence examination was never ordered to rule out borderline intellectual function, the consultative examination performed by Dr. Noia did in fact rule out the condition.  Tr. at 285.

[4]  Although an IQ test is typically part of an administrative record when the Plaintiff is being assessed for cognitive disabilities, it serves merely to strengthen the record and is not required when other evidence has been developed by the ALJ which forms an alternate path to the same conclusion. In the present case, the ALJ has developed the administrative record with medical records from numerous doctors who assessed the Plaintiff's cognitive abilities.

evidence from both treating and consultative sources indicating that her cognitive and mental abilities were not significantly impaired.

### 2. Severity

At Step Two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities.  See 20 C.F.R. §§ 404.1520(c), 416.920(c).  Basic work activities refer to "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1521(b); Bowen, 482 U.S. at 141.  Examples include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to supervision, co-workers, and usual work situations"; and "[d]ealing with changes in a routine work setting.  20 C.F.R. § 404.1521(b); Bowen, 482 U.S. 137 at 141.

The claimant bears the burden of presenting evidence establishing severity.  Miller v. Comm'r of Social Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. § 404.1512(a).  Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe."  McConnell v. Astrue, No. 6:03-CV-0521, 2008 WL 833968, at *2 (N.D.N.Y. March 27, 2008) (citing Coleman v. Shalala, 895 F.Supp. 50, 53 (S.D.N.Y.1995)).  Indeed, a "finding of not severe should be made if the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on an individual's ability to work."  Bowen, 482 U.S. at 154 n.12; Hutchins v. Astrue, No. 08-CV-943, 2010

WL 786291, at *4 (N.D.N.Y. Mar. 3, 2010); Rosario v. Apfel, No. 97-CV-5759, 1999 WL 294727, at

*5 (E.D.N.Y. March 19, 1999) (internal quotation marks omitted).

Regarding Plaintiff's borderline intellectual function, the ALJ noted that the condition was

ruled out during a consultative examination and that the record contained no educational records

establishing that Plaintiff had a learning disability or took special education classes.  Tr. at 17.  In

addition, the ALJ noted that Plaintiff's daily activities, testimony, and medical records were not

supportive of her argument.  Id.  Lastly, the ALJ noted that the mere existence of a symptom by itself

cannot establish a medically determinable impairment and that there must be some medical signs or

laboratory findings demonstrating the existence of the condition.  Id.

In response, Plaintiff contends that the ALJ erred because the record contains substantial

evidence including Plaintiff's medical evaluations and testimony about her educational history which

shows that her borderline intellectual functioning is severe.  Pl.'s Br. at 14-15.  Plaintiff refers to Dr.

Noia's psychological evaluation and to Dr. Giaccio's evaluations, which stated that her concentration

was poor and that she had mental health conditions.  Id. at 373, 402.  Finally, Plaintiff refers to her own

testimony that she dropped out of school after completing ninth grade, received special education, and

also continues to have difficulty reading, writing, spelling, and doing math.  Id. at 63.

The Court finds that the ALJ's decision was supported by substantial evidence and that Plaintiff

did not sustain her burden in showing that her borderline intellectual functioning severely impairs her

ability to perform basic work activities.  See 20 C.F.R. §§ 404.1520(c), 416.920(c).  In making this

determination, the Court has considered Plaintiff's medical records, work history, and personal

activities.

First, the Court notes that medical records provide substantial evidence indicating Plaintiff's

borderline intellectual functioning was not severe.  See Coleman, 895 F. Supp. at 53 (holding that the diagnosis, treatment or presence of a disease or impairment alone is not enough to make that condition severe).  Plaintiff was not diagnosed with borderline intellectual functioning by either her treating psychiatrist, Dr. Giaccio, or her treating physician, Dr. Wike.  Tr. at 362, 378.  Conversely, both doctors stated that her thought process was logical and organized.  Id.  Although Plaintiff's argument cites Dr. Noia's medical examination for his "estimate" that her intellectual functioning was in the borderline range, Dr. Noia ruled out the condition during that same consultative examination.  See Williams ex rel. Williams v. Bowen, 859 F.2d 255, 261 (2d Cir. 1988) (findings of ALJ must be consistent with medical evidence); Bell v. Secretary of the Dept. of Health & Human Servs., 732 F.2d 308, 310-12 (2d Cir. 1984) (ALJ must carefully examine medical evidence, taking into account the entire record).  Moreover, those same records also provide that Plaintiff is able to count and perform simple calculations, has a coherent thought process, is not delusional, does not have disordered thinking, is capable of maintaining attention and concentration for tasks, and appears intellectually capable of managing money.  Tr. at 284-85; see Brown, 2005 WL 1745655, at *4.[5]  In the Mental Residual Functional Capacity Assessment, Dr. Mata stated that Plaintiff has no marked limitations to her understanding and memory, concentration and persistence, social interaction, or ability to adapt to the workplace setting.  Tr. at 348-49; see Brown, 2005 WL 1745655, at *4.  Dr. Mata also wrote that "claimant retains the functional capacity to perform the basic mental demands of the four general areas of functioning for unskilled work."  Tr. at 349.

---

[5]  The Court notes the similarities between the present case and Brown, where the court affirmed an ALJ's decision that the plaintiff's borderline intellectual functioning was not severe.  See 2005 WL 1745655, at *4.  There, as here, the plaintiff's speech was intelligible, his thought process was coherent and logical, he performed household chores, he managed his finances, and he was independent with respect to personal hygiene.  See id.

Plaintiff's testimony of her work history indicates that she held three different jobs.  First, for five years she worked at Kentucky Fried Chicken, where she prepared food and worked in the drive-through.[6]  Tr. at 66.  Then she was employed at Family Dollar where she worked as a stock person and cashier.  Id. at 65, 73.  Most recently, she worked at McDonald's where she did the dishes and made breakfast.  Id. at 64.

Lastly, Plaintiff's personal activities also indicate that her borderline intellectual function was not severe.  She dresses, bathes, grooms herself, prepares food and performs general cleaning and household chores like laundry.  Tr. at 284; see Edwards, 2010 WL 3701776, at *4 (laundry and grooming); Brown v. Comm'r of Soc. Sec., No. 6:00-CV-1147, 2005 WL 1745655, at *4 (N.D.N.Y. June 30, 2005) (personal grooming and household chores); Stewart v. Apfel, 996 F. Supp. 186, 193 (N.D.N.Y. 1998) (personal grooming).  Moreover, she can read and write.  Tr. at 63; see Scott v. Comm'r of Soc. Sec., No. 7:06-CV-481, 2009 WL 1559819, at *10 (N.D.N.Y. June 2, 2009) (holding that borderline intellectual functioning was severe because plaintiff could not read).  Finally, she has a driver's license and drives.  Tr. at 64; see, e.g., Edwards, 2010 WL 3701776, at *4; Stewart, 996 F. Supp. at 193.

### 3. Affective Disorder

The Step Three "inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations."  Berry, 675 F.2d at 467.  An affective

---

[6]  It bears mention that the psychological report Plaintiff discusses in her brief was conducted on April 1987.  Tr. at 414.  As previously stated, an impairment is severe when it significantly limits an individual's physical or mental ability to perform basic work activities,or the abilities and aptitudes necessary to do most jobs.  See 20 C.F.R. § 404.1521(b); Bowen, 482 U.S. at 141.  Plaintiff's work history subsequent to this evaluation illustrates her ability to work in spite of her borderline intellectual function and learning disability in math.  Tr. at 414-15.

disorder is defined in 12.04 of the Social Security Listing of Impairments as "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.  Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." 20 C.F.R. Part 404, Subpt. P, App. 1.  To meet the Listing requirements for an affective disorder, a plaintiff must satisfy the requirements set forth in either (1) Parts A and B of the Listing or (2) Part C.  Id.  The pertinent language of Part A requires:

> [m]edically documented persistence, either continuous or intermittent, of one of the following: 1.  Depressive syndrome characterized by at least four of the following: a. Anhedonia or pervasive loss of interest in almost all activities; or b. Appetite disturbance with change in weight; or c.  Sleep disturbance; or d. Psychomotor agitation or retardation; or e.  Decreased energy; or f.  Feelings of guilt or worthlessness; or g. Difficulty concentrating or thinking; or h.  Thoughts of suicide; or i. Hallucinations, delusions, or paranoid thinking.

Id.  Part B is satisfied when an individual's mental impairments result in at least two of the following: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence or pace, or repeated episodes of decompensation, each of extended duration.  Id.

The ALJ's Step Three evaluation found that Plaintiff's impairments considered individually and cumulatively did not meet or medically equal the criteria of Social Security Listing 12.04 for affective disorders because the impairments failed to satisfy the requirements of Part B and Part C.[7]  Tr. at 17-18.  The ALJ noted that Part B was not satisfied because Plaintiff's mental impairments did not result in at least two marked difficulties or marked restrictions.  Id.

In response, Plaintiff argues that the ALJ erred because medical evidence indicates that Plaintiff's impairments are severe enough to meet this listing and satisfy step three.  Pl.'s Br. at 15.

---

[7]  Plaintiff does not advance an argument with respect to Part C.

Plaintiff first claims that Part A was satisfied because there is substantial evidence that her affective disorder caused medically documented persistence, either continuous or intermittent, of depressive syndrome symptoms.  Id.  Plaintiff next contends that Part B was satisfied because substantial evidence of marked limitations exist in the areas of social function and in concentration, persistence, or pace.  Id. at 16.

Because Plaintiff does not advance an argument with respect to Part C, she must satisfy both Part A and Part B to meet the Social Security Listings 12.04 for affective disorders.  See 20 C.F.R. Part 404, Subpt. P, App. 1.  First, the Court notes that the ALJ found that Plaintiff has marked difficulties in social functioning because her testimony indicated that she has difficulty getting along with friends and family, as well as coworkers.  Tr. at 17.  Second, the Court notes that Plaintiff does not dispute the ALJ's findings that the Plaintiff did not have marked limitations in activities of daily living and did not suffer extended repeated episodes of decompensation.  Pl.'s Br. at 16.  An examination of the record fails to demonstrate that Plaintiff's mental impairments satisfied Part B by causing at least two marked limitations or, alternatively, one marked limitation and extended repeated episodes of decompensation. "Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings."  20 C.F.R. Part 404, Subpt. P, App. 1.  Substantial evidence within the record indicates that Plaintiff does not have marked limitations to concentration, persistence or pace.[8]  Rosado, 805 F. Supp. at 153 (holding that reviewing court must be deferential when reviewing Commissioner's findings even

---

[8]  The Court notes Defendant's argument that Dr. Giaccio's opinion should be afforded lesser weight.  D.'s Br. at 14.  Although ALJs have discretion to assign weight to medical testimony, as the following Section indicates, the Court does not address the argument because the ALJ did not include the necessary reasoning to explain why the treating physician's opinion was afforded such little weight.

when the reviewing court's own independent analysis would differ).  According to Plaintiff's Mental Residual Functional Capacity Assessment, Plaintiff has no marked limitations relating to sustained concentration and persistence.  Tr. at 347.  Dr. Mata, the state agency medical consultant who reviewed the medical evidence, stated that Plaintiff's attention and concentration were intact with good performance and that she "retains the functional capacity to perform the basic mental demands of the four general areas of functioning for unskilled work." Id. at 349.  Moreover, according to Dr. Noia, Plaintiff appears intellectually capable of managing money, understanding and following simple instructions and directions, performing simple and some complex tasks with supervision and independently, maintaining attention and concentration for tasks, regularly attending to a routine and maintaining a schedule, and learning new tasks.  Id. at 284-85.

Accordingly, the Court holds that there is substantial evidence to support the ALJ's finding that Plaintiff does not have an affective disorder as defined in 12.04 of the Social Security Listing of Impairments because Plaintiff did not satisfy the requirements set forth in either both parts A and B of the Listing or Part C.

### 4. Treating Physician's Rule

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.  20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).  Although the treating physician rule need not be applied if the treating physician's opinion is inconsistent with opinions of other medical records, "not all expert opinions rise to the level of evidence that is sufficiently substantial to undermine the opinion of the treating

physician." <u>Burgess v. Astrue</u>, 537 F.3d 117, 128 (2d Cir. 2008).  Even when the treating physician's opinion is not given controlling weight, the following factors must be considered by the ALJ when deciding how much weight the opinion should receive: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 404.1527(c)(2); <u>Shaw</u>, 221 F.3d at 134 (quoting <u>Clark v. Comm'r of Soc. Sec.</u>, 143 F.3d 115, 118 (2d Cir. 1998)).  The ALJ is also required to set forth her reasons for the weight she assigns to the treating physician's opinion.  20 C.F.R. § 404.1527(c)(2); <u>Shaw</u>, 221 F.3d at 134.  The Second Circuit has stated that it will "not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." <u>Halloran</u>, 362 F.3d at 33.

In the present case, the ALJ found that the limitations set forth by Plaintiff's treating physician, Dr. Giaccio, "are not corroborated or supported by the medical evidence" and accordingly assigned Dr. Giaccio's opinion lesser weight.  Tr. at 22.  Conversely, the ALJ assigned "great weight" to the consultative examination performed by Dr. Noia, the consulting psychologist because she found the "opinion to be consistent with the record as a whole." <u>Id.</u> at 21.

In response, Plaintiff argues that the ALJ improperly assigned lesser weight to Dr. Giaccio, who opined that Plaintiff could perform significantly less than the full range of sedentary work.  Pl.'s Br. at 19.  Plaintiff also contends that the ALJ failed to develop the record by requesting opinion evidence of Plaintiff's physical limitation from treating physician Dr. Wike.  <u>Id.</u>

The Court finds that the ALJ failed to provide "good reasons" that comprehensively set forth

why she did not apply the treating physician rule and assigned lesser weight to Dr. Giaccio's medical opinion; the Court therefore remands the case to the ALJ for further consideration.  Halloran, 362 F.3d at 33.  In making this determination, the Court has considered the ALJ's conclusion that Dr. Giaccio's opinion was inconsistent with the record as well as the ALJ's reliance on Dr. Noia's consultative examination.

Although a medical opinion's consistency with the whole record is a factor an ALJ must consider when the treating physician's opinion is not given controlling weight, 20 C.F.R. § 404.1527(c)(2) also provides that an ALJ must consider several other factors when determining how much weight a treating physician's testimony should receive.  As the record indicates, the ALJ made only a passing mention of Dr. Giaccio's opinion before concluding that his opinion was inconsistent with the record.  See Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998) (holding that failure to apply legal analysis using factors contained in 20 C.F.R. § 404.1527(c)(2) is grounds for remand).  The conclusory statement that Dr. Giaccio's opinion is inconsistent with the record, without more, is not the type of comprehensive reasoning necessary to explain why a treating physician's opinion was not given controlling weight.  See Serianni v. Astrue, No. 607-CV-250, 2010 WL 786305, at *8 (N.D.N.Y. Mar. 1, 2010) (holding that an ALJ failed to apply the treating physician rule because he did not identify any specific findings or evidence in the record inconsistent with the treating physician and did not provide any valid reasons for assigning greater weight to other medical opinions); Santiago v. Barnhart, 441 F. Supp. 2d 620, 630 (S.D.N.Y. 2006) (holding that an ALJ's "vague and conclusory" assertion that a treating physician's opinion contradicts the record is error).  Such reasoning is circular because, while the Plaintiff's testimony of her own condition, Ms. Turner's medical opinion, and Dr. Giaccio's medical opinion are indeed inconsistent with Dr. Noia's medical opinion and unsupported by it, they

are consistent with one another about some of her limitations.

As the primary basis for her conclusion that Dr. Giaccio's opinion was inconsistent with the record, the ALJ relied on evidence collected at a consultative examination performed by Dr. Noia.  Tr. at 21-22.  First, the Court notes that consultative examinations are generally not accorded the same weight as examinations performed by a treating physician because consultative examinations "are often brief, are generally performed without benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day."  Cruz v. Sullivan, 912 F.2d 8, 13 (2d Cir. 1990) (quoting Torres v. Bowen, 700 F. Supp. 1306, 1312 (S.D.N.Y. 1988)).  Second, "the opinions of consulting physicians – whether examining or non-examining – are entitled to relatively little weight where there is strong evidence of disability in the record."  Correale-Englehart v. Astrue, 687 F. Supp. 2d 396, 427 (S.D.N.Y. 2010).  Finally, even if Dr. Giaccio's medical opinion were contradicted by substantial evidence and were therefore not controlling, it still might be entitled to significant weight because "the treating source is inherently more familiar with a claimant's medical condition than are other sources."  See Trail v. Astrue, No. 5:09-CV-01120, 2010 WL 3825629, at *7 (N.D.N.Y. Aug. 17, 2010); (citing Santiago, 441 F. Supp. 2d at 627).  Nevertheless, the ALJ made only passing mention of Dr. Giaccio's medical opinion.

Because the Court concludes that the administrative record does not contain comprehensive reasoning as to why the ALJ declined to apply the treating physician rule, the Court need not reach the issue of whether Dr. Giaccio's opinion as to disability was contradicted by substantial evidence and instead remands the case for further proceedings.  See Cruz v. Sullivan, 912 F.2d 8, 13 (2d Cir. 1990) (citing Gilliland v. Heckler, 786 F.2d 178, 184 (3d Cir. 1986) (decision to reverse and direct award of benefits rather than to vacate judgment and remand "should be made only when the administrative

record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the Claimant is disabled and entitled to benefits")).  On remand, the ALJ must reexamine the record and reconsider the application of the treating physician's rule.  To determine the appropriate weight for the treating physician's opinion, the ALJ must consider factors listed in 20 C.F.R. § 404.1527(c)(2).  The ALJ must also comprehensively set forth "good reasons" for the weight assigned to the treating physician's opinion and cite substantial evidence from the record supporting her decision.  Halloran, 362 F.3d at 33. Lastly, the Court notes that, even if the treating physician's rule is not applied, the treating physician's opinion may still be entitled to significant weight.  See Trail, 2010 WL 3825629, at *7.

Before proceeding further, the Court notes that Dr. Noia's consultative examination is not given controlling weight in the following analysis because no "good reasons" to discredit the treating physician's opinion were provided.

### 5. Plaintiff's Credibility

20 C.F.R. § 404.1529(a) provides that an ALJ consider both subjective and objective medical evidence when evaluating a claimant's symptoms to determine disability.  When there is conflicting evidence about the extent of material issue such as a claimant's pain or other disability, the ALJ must evaluate that claimant's credibility.  See, e.g., Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999); Donato v. Sec'y of Dept. of Health & Human Services of U.S., 721 F.2d 414, 418 (2d Cir. 1983); Correale-Englehart, 687 F. Supp. 2d at 434.  An ALJ "may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'"  Lewis v. Apfel, 62 F. Supp. 2d 648,

651 (N.D.N.Y. 1999) (Kahn, J.) (quoting Gallardo v. Apfel, No. 96-CV-9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)).  However, the ALJ's discretion to weigh testimony is not unlimited because subjective testimony is an important factor to be considered when determining disability.  See Correale-Englehart, 687 F. Supp. 2d at 434 (citing Mimms v. Heckler, 750 F.2d 180, 185 (2d Cir. 1984)).  An ALJ's credibility analysis is not supported by substantial evidence when the analysis is based on inaccurate or inconsistent evidence.  See, e.g., Genier v. Astrue, 606 F.3d 46, 50 (2d Cir. 2010) (remanding because ALJ misinterpreted testimony); Horan v. Astrue, 350 F. App'x 483, 485 (2d Cir. 2009) (remanding because ALJ made factual errors, based assessment on testimony that did not exist, and failed to consider work history); Haggerty v. Comm'r of Soc. Sec., No. 3:10-CV-306, 2011 WL 841443, at *12 (N.D.N.Y. Feb. 14, 2011) (remanding because ALJ's factual summary was inaccurate and credibility analysis was therefore flawed).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements regarding the intensity, persistence, and limiting effects of those symptoms were not credible to the extent they were inconsistent with the residual functional capacity assessment.  Tr. at 19.  The ALJ concluded that "[t]he record is not supportive of the degree of limitation the claimant claims to suffer from due to her mental impairments, and therefore her complaints are not entirely credible."  Id. at 21.

In her appeal, Plaintiff argues that the ALJ failed to apply the appropriate legal standards because the ALJ found her to be less than fully credible.  Pl.'s Br. at 22.  Plaintiff further contends that the ALJ summarized some of Plaintiff's testimony, medical evidence, symptoms, activities of daily living, and past treatment in a way that inaccurately or incompletely cited the facts that the ALJ found to undermine the Plaintiff's credibility.  Id.

"[T]he Court has previously . . . remand[ed] for failure to properly apply the treating physician rule. The ALJ's proper evaluation of [the treating physician's] opinions will necessarily impact the ALJ's credibility analysis. Thus, the credibility evaluation is necessarily flawed." Mortise v. Astrue, 713 F.Supp.2d 111, 124-25 (N.D.N.Y. 2010).

The Court does note that the ALJ appears to place unduly great weight on Plaintiff's activities of daily living as a basis for the credibility assessment. See Knighton v. Astrue, No. 5:09-CV-0991, 2012 WL 951575, at *8 (N.D.N.Y. Mar. 20, 2012) (holding that activities such as caring for pets, preparing simple meals, driving a vehicle, and helping with household chores do not by themselves contradict allegations of disability). The Second Circuit has held that "a claimant need not be an invalid to be found disabled." Murdaugh v. Sec'y of Dept. of Health & Human Services of U.S., 837 F.2d 99, 102 (2d Cir. 1988). Daily activities are one of numerous factors ALJs may – and should – consider when evaluating symptoms. 20 C.F.R. § 404.1529(c)(1)(i); Correale-Englehart, 687 F. Supp. at 438 (holding it was error when ALJ did not meaningfully evaluate daily activities when evaluating symptoms). Here, the ALJ observed that Plaintiff  "spends her day cleaning the house, watching birds, and watching television, yet makes no complaint of physical pain due to these activities." Tr. at 20. "[I]t is well-settled that '[s]uch activities do not by themselves contradict allegations of disability,' as people should not be penalized for enduring the pain of their disability in order to care for themselves." Knighton, 2012 WL 951575, at *8 (quoting Woodford v. Apfel, 93 F. Supp.2d 521, 529 (S.D.N.Y. 2000)).

Accordingly, the Court remands and instructs the ALJ to reconsider the record as a whole and apply the treating physician rule before reassessing Plaintiff's credibility. In doing so, the Court notes that the ALJ should consider the cumulative effect of Plaintiff's disabilities. To the extent that the ALJ

considers non-medical evidence, the Court notes that 20 C.F.R. § 404.1529(c)(3) provides additional

factors which may be considered to help determine the extent to which Plaintiff's symptoms limit her

capacity to work.  Finally, if the ALJ finds evidence supporting Plaintiff's testimony, the Second

Circuit has held that "a claimant's subjective evidence of pain . . . is entitled to great weight where . . .

it is supported by objective medical evidence." Simmons v. U.S. Railroad Retirement Board, 982 F.2d

49, 56 (2d Cir. 1992) (quoting Rivera v. Schweiker, 717 F.2d 719, 724 (2d Cir. 1983) (internal

quotation marks omitted)).

### 6. The ALJ's Step Five Determination

The ALJ's Step Five determination consists of two parts.  First, the Commissioner must assess

the claimant's job qualifications by considering his or her physical ability, age, education, and work

experience.  Second, the Commissioner must determine whether jobs exist in the national economy that

a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R.

§§ 416.920(g); 404.1520(g); Campbell, 461 U.S. at 460; Ghazibayat v. Schweiker, 554 F. Supp. 1005,

1013 (S.D.N.Y. 1983).  The Commissioner has the burden of proof for both parts of Step Five.  See

Bowen, 482 U.S. at 146 n.5; Ferraris, 728 F.2d at 582.

Courts have held that the Commissioner can satisfy her burden of showing that jobs exist in the

national or regional economy by introducing vocational expert testimony.  See Bapp v. Bowen, 802

F.2d 601, 603 (2d Cir. 1986).  "The vocational expert may testify as to the existence of jobs in the

national economy, as well as to the claimant's ability to perform any of those jobs, given her functional

limitations." Colon v. Comm'r of Soc. Sec., No. 6:00-CV-0556, 2004 WL 1144059, at *6 (N.D.N.Y.

Mar. 22, 2004) (collecting cases).  However, "[v]ocational expert testimony alone does not provide the

necessary substantial evidence from which to deduce a capacity to engage in substantial gainful activity

when there is overwhelming evidence to the contrary in the record." De Leon v. Sec'y of Health & Human Services, 734 F.2d 930, 934-35 (2d Cir. 1984) (citing Yawitz v. Weinberger, 498 F.2d 956, 961 (8th Cir. 1974)).  In addition, the Second Circuit has held that there must be "substantial record evidence to support the assumption upon which the vocational expert based his opinion."  Dumas v. Schweiker, 712 F.2d 1545, 1554 (2d Cir. 1983).

Here, the ALJ found that Plaintiff is unable to perform any past relevant work because the past relevant work exceeds the limitations set forth in her residual functional capacity assessment.  Tr. at 22. Then, the ALJ considered the testimony of a vocational expert who stated that an individual with Plaintiff's age, education, work experience, and residual functional capacity would be able to perform the requirements of representative occupations such as surveillance system monitoring.  Id. at 23. Finally, the ALJ concluded that a finding of "not disabled" was appropriate because the aforementioned job exists in significant numbers in the national economy, and the Plaintiff is capable of making a successful adjustment to the position.  Id. at 24.

Plaintiff contends that the Commissioner failed to meet the burden at Step Five because the ALJ failed to develop the record with testimony regarding Plaintiff's borderline intellectual functioning, the ALJ's RFC evaluation was not supported by substantial evidence, and the hypothetical question the ALJ asked the vocational expert was incomplete.  Pl.'s Br. at 24.  Plaintiff also argues that there was overwhelming evidence inconsistent with the ALJ's RFC finding and the hypothetical question presented to the vocational expert reflected the ALJ's flawed RFC finding.  Id.

The Court has previously found errors in the ALJ's application of the treating physician rule. Therefore, the Court need not determine whether the ALJ erred in Step Five.  The Court does note that the vocational testimony within the record, without more, does not provide the necessary substantial

evidence to support the ALJ's determination.  De Leon, 734 F.2d at 934-35.  On remand, the ALJ may

further develop the record to address any deficiencies it contains before reaching the Step Five

determination.

IV.    **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that the decision of the Commissioner is **VACATED** and that this case is

**REMANDED** for further proceedings in accordance with this opinion; and it is further

**ORDERED**, that the Clerk serve a copy of this order on all parties by regular mail.

**IT IS SO ORDERED.**

DATED:      September 06, 2012
            Albany, New York


_____
Lawrence E. Kahn
U.S. District Judge